## WARREN *v.* GLYNN.

The town where a woman, liable to become a county pauper, dwells and has her home, is liable by law for the maintenance of her bastard child, within the meaning of the fifth, seventh, eighth and ninth sections of the sixty-eighth chapter of the Revised Statutes.

If such woman neglect or refuse to prosecute, such town may rightfully institute and carry on proceedings against the putative father of such bastard child, for the purpose of obtaining indemnity against liability for its maintenance.

COMPLAINT FOR BASTARDY, under the provisions of sections 5, 7, 8 and 9, of chap. 68 of the Revised Statutes. It was agreed by the parties that the woman upon whom the bastard child was alleged to have been begotten by the defendant, had not now and never had a legal settlement in any town in the

United States, but was a foreigner and a poor person, residing, at the time said child was alleged to have been begotten, long before, and ever since, in the plaintiff town. The court being of opinion, upon the agreed statement of facts, that the town of Warren was not by law liable for the maintenance of said child, so as to be entitled to maintain this proceeding, adjudged that the complaint be dismissed. To which judgment of the court the town of Warren excepted, and filed a bill of exceptions, which was allowed by the court.

*T. J. Smith,* for the plaintiff.

*J. S. Bryant,* for the defendant.

Fowler, J. The single question presented by the bill of exceptions in this case is, whether, within the intention of the legislature and the fair construction of the language of the statute, the town where a female, who, if poor and unable to support herself, would be a county pauper, resides and has her home, is so liable by law for the maintenance of a bastard child with which such female may be pregnant, as to be legally entitled to institute and prosecute to final judgment a complaint for bastardy against the putative father of such child, if the mother herself neglect or refuse so to do.

And, first, as to the intention of the legislature. The object of the enactment in relation to prosecutions for bastardy most clearly was, by summary proceedings, to hold the putative father to answer, and ultimately to compel him, if found chargeable, to furnish security for the support and maintenance of the child during its tender years, or at least to indemnify and save the public harmless from any liability to expense or loss by reason of such support and maintenance. No reason has been suggested, and none occurs to us as possible, why the policy, which requires and would compel the putative father of a possible town pauper to secure the public against probable or possible liability for its support, should not also require and compel the father of a possible

county pauper to furnish like security. To assume that the legislature made provision for one class of cases, and designedly omitted to provide in any way for the other, would do violence alike to the wisdom and sense of justice of the law-making power. Yet it is admitted that unless the town where the mother is resident is entitled to prosecute, there is no statute provision to compel the putative father of a county pauper to furnish security for the support of his child, if the mother shall neglect or refuse to prosecute him.

Taking it, then, for granted that the legislature could not have designed to leave the public entirely unprotected against liabilities of this character, the only remaining inquiry is, whether the language employed in the statute is reasonably susceptible of an interpretation which would authorize the town, wherein a possible county pauper has her home, to take and pursue the measures necessary to protect themselves and the community from the burden likely to be imposed by the maintenance of her illegitimate offspring. A careful examination of the various provisions of the law has left no doubt in our minds upon this subject.

By the fifth section of chapter sixty-eight, of the Revised Statutes, Compiled Laws 163, it is provided that, in prosecutions for bastardy, the court shall order the putative father, found chargeable by the court or jury, to pay to the mother of the child, or to the selectmen of the town liable by law for the maintenance of the child, such sum as they shall deem reasonable; and may order him, or the mother, or both of them, to give security to save the town harmless from all charge for the maintenance of such child. Subsequent sections of the same chapter — Compiled Laws 163, 164 — authorize the town, liable by law for the maintenance of the child, in case the mother, having made complaint, shall abandon it, or shall neglect or refuse to make any complaint, themselves to prosecute, or institute and prosecute to final judgment, the necessary proceedings to secure themselves indemnity against any expense to arise from the maintenance of such child.

By the first section of the sixty-sixth chapter of the Revised

Statutes, Compiled Laws 158, the town in which any person, poor and unable to support himself, may happen to be, is made liable for the relief and maintenance of such poor person, whether he has a settlement in such town or not, and whether he has relatives of sufficient ability or not. There can be no doubt that, under this section, the town in which she resided and had her home, would be liable in the first instance for the maintenance of the illegitimate child of any county pauper, as well as for that of the child of any pauper having a settlement in their own or any other town in this State, or having relatives, of sufficient ability, liable by law for her support. And we are satisfied this liability in the first instance is such a liability for the maintenance of such child as is contemplated in the fifth, seventh, eighth and ninth sections of the sixty-eighth chapter of the Revised Statutes.

It is true, that, by the first section of chapter fifty-seven, Compiled Laws 160, as modified by the act of July 14, 1855, it is provided that when any poor person, for whose support no person or town in this State is chargeable, shall be relieved or buried at the expense of any town, their overseers of the poor may present an account of all moneys so expended, to the county commissioners, who shall allow therefor such sum as they shall think reasonable, to be paid out of the county treasury. But this by no means relieves and frees the town from their liability by law for the maintenance of such poor person, or indemnifies them against the expense of such maintenance. Even if the commissioners allow the entire amount of money expended from year to year, there is no provision whereby the town can receive any compensation for interest on the amount of such expenditures, for the time and services of their overseers of the poor in procuring such maintenance, in making out and presenting the accounts thereof, supported by proper vouchers and evidence, and in obtaining the allowance of the same by the proper tribunal; all which are items of expense and loss to the town, for which they have a right to seek and obtain indemnity.

The statute authorizes the court to require the putative father,

found chargeable, to give security to save the town harmless from the maintenance of his child. The town is equally liable for its maintenance in the first instance, whether that child be a town or county pauper. In either case, the town may never be required to contribute any thing for its support. But it is quite as certain that the town must be damnified to a greater or less extent, if compelled to contribute in the one case as in the other. They are as necessarily pecuniarily injured, though to a less extent, if obliged to maintain a county pauper, as one having a settlement within their own town. The difference is in degree and not in kind. Against this loss and injury, however inconsiderable, they are entitled to demand and receive indemnity.

It is worthy of notice, in giving a construction to this provision of the statute, that while the language employed in imposing upon towns a liability to maintain all poor persons who may happen to need relief while resident within their limits, regardless of the place of their settlement or the ability of relatives, is substantially followed in stating the liability which shall entitle them to institute and carry on prosecutions for bastardy, a different phraseology is generally, if not uniformly adopted, to designate the liability of towns in which such poor persons have their legal settlement.

Thus, in the eighth section of the sixty-sixth chapter of the Revised Statutes, Compiled Laws 159, it is said that when a poor person has no relations of sufficient ability, the town wherein such person has a legal settlement shall be "liable for his *support*," not for his "*maintenance*," as that has already been furnished by the town where such poor person happened to reside. So, in the ninth section of the same chapter, Compiled Laws 159, it is provided that a town, incurring expenses in maintaining or burying any poor person having a settlement in another town, or relations of sufficient ability, may recover the sum so expended "of the town or person so *chargeable* by law with the *support* of such poor person." Reference to this phraseology occurs in sections ten and twelve, fourteen and fifteen, of the same chapter.

In the first section of chapter sixty-seven of the Revised

Statutes, Compiled Laws 160, the same language is used — " any poor person for whose *support* no person or town in this State is *chargeable*" — not for whose *maintenance* no person or town is *liable*. Again, in the fourteenth section of chapter sixty-six, the town or person " *chargeable*" with the support of a pauper, is spoken of; and in the second and third sections of chapter sixty-seven, the county is authorized to provide for the " *support*" of the poor " *chargeable* to such county," and to bind out any person " *chargeable*," or liable to be " *chargeable*," to the county.

By the first section of chapter sixty-five of the Revised Statutes, Compiled Laws 156, a settlement gained by any person in any town, " so as to oblige such town to *support* such person," is particularly spoken of, and the modes of gaining it pointed out; and in the third section of the same chapter, Compiled Laws 157, it is declared that no town shall be liable for " the *support* of any person," unless he, or the person under whom he derives his settlement, shall have acquired the same under some law passed since December 31, 1795.

Another consideration, confirming us in the construction we are clear should be given to the language of the statute involved in the case before us, is the great difficulty and delay not unfrequently attending the determination of the question, whether a female pauper has her settlement in the town of her residence, in some other town, or no settlement whatever in the State, to say nothing of the ability of relatives within the prescribed degrees of consanguinity. Such decision is often the result of months and years of diligent inquiry, embodied in the verdict of a jury; confirmed and sanctioned, it may be, by an adjudication and settlement of nice legal questions. It is not to be believed, that while making provision for summary proceedings in the form of a criminal prosecution, to hold the reputed father of an illegitimate child to respond the ultimate civil liability consequent upon his violation of the laws of social order, the legislature could have contemplated, as preliminary and essential to the commencement of those proceedings, the correct determination, or even any investigation of a question, so frequently

difficult and complicated. The necessity of such determination or investigation would very often render utterly useless and impracticable the remedy provided as the means of securing indemnity to the town, by affording abundant opportunity for the escape of the offender long before it could be resorted to.

Upon the whole, therefore, we entertain no doubt that the town wherein a woman pregnant with a bastard child, and liable to become a county pauper, dwells and has her home, is by law liable for the maintenance of such child, within the meaning of the fifth, seventh, eighth and ninth sections of the sixty-eighth chapter of the Revised Statutes, and so authorized and empowered, in case the mother abandon when made, or neglect and refuse to make and prosecute, a complaint against the putative father, themselves to institute and prosecute such complaint, for the purpose of obtaining full and complete indemnity against such liability.

Under this view of the proper construction of the statute, the judgment of the Common Pleas, dismissing the complaint in the present case, was erroneous, and the exceptions thereto are sustained. The judgment must, therefore, be vacated, and the complaint stand for trial in that court.

*Exceptions sustained — judgment vacated.*